/IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 4260 |
| v. ) | |
| ) | Judge Jorge Alonso |
| JAMES KAPOTAS, PAUL MULLARKEY, and ) | |
| GLEN TRAMWELL, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, William Smith, brings this civil rights action pursuant to 42 U.S.C. § 1983 against defendants James Kapotas, Paul Mullarkey, and Glen Tramwell, three health care providers who treated him while he was an inmate of the Cook County Jail ("the Jail"). Plaintiff claims that defendants violated his Fourteenth Amendment due process rights by failing to diagnose and provide appropriate medical care for his arthritis. Defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the defendants' motion is denied.

**BACKGROUND**

In his Third Amended Complaint, plaintiff makes the following pertinent allegations. Plaintiff was booked into Cook County Jail on July 12, 2017. He soon began to experience pain and discomfort in his wrist and knee. In September 2017, he requested to see a doctor, and the Cermak Health Services Outpatient Clinic ("CHS clinic") x-rayed his wrist. The x-ray revealed early signs of arthritis, but "these conditions were not notated in Mr. Smith's medical evaluation and Mr. Smith was not prescribed any treatment." (3d Am. Compl. ¶ 11.) In October 2017, at an appointment with a physician's assistant ("PA") at the CHS clinic, plaintiff complained about his

right wrist pain and also about his left knee pain. The PA referred him to an orthopedic specialist, defendant Dr. James Kopotas. Dr. Kopotas examined his x-rays in November 2017, but instead of examining plaintiff in person, he recommended plaintiff undergo occupational therapy before scheduling an orthopedic visit.

Meanwhile, plaintiff began to develop "itchy, dry patches of skin on his scalp" and sought medical treatment for his symptoms. (*Id.* ¶ 13.) They turned out to be caused by psoriasis, a chronic skin disease caused by an overactive immune system.

Psoriasis is commonly associated with an acute form of arthritis called psoriatic arthritis, which causes joint paint, stiffness, and swelling, often in the knees, fingers, and wrist. Psoriatic arthritis is not curable, but prescription medications can slow its progression and save the joints and related tissue from permanent damage. Without proper treatment, psoriatic arthritis can be debilitating. (*Id.*) According to the National Psoriasis Foundation, "Early recognition, diagnosis and treatment of psoriatic arthritis are critical to relieve pain and inflammation and help prevent joint damages. Furthermore, delaying treatment by as little as six months can result in permanent joint damage, according to studies." (*Id.* ¶ 14.)

On February 21, 2018, plaintiff slipped on a puddle of water, exacerbating the pain and discomfort in his right wrist and left knee. On March 7, 2018, he saw Dr. Kapotas and informed him that the pain in his knee and wrist was not improving and the nonsteroidal anti-inflammatory drugs ("NSAIDs") he had been prescribed were not alleviating his pain. Dr. Kapotas took new x-rays and compared them to plaintiff's September 2017 x-ray images, noting a "suspect ligamental/ACL tear" in plaintiff's knee, but failing to notate "what should have been obvious: [t]he x-rays showed undiagnosed arthritis in Mr. Smith's carpometacarpal joint and radiocarpal joint, as well as in the radioulnar joint and the intercarpal joint, indicating that the arthritis was

progressing and getting worse." (*Id.* ¶ 16.) Despite these signs, Dr. Kapotas did not diagnose plaintiff's arthritis.

On March 12, 2018, CT scans were performed on plaintiff's wrist and knee, which were reviewed by defendant Dr. Paul Mullarkey, a radiologist. The scans again showed "significant signs of arthritis," in both the wrist and knee, "which were not diagnosed by Dr. Mullarkey." (*Id.* ¶ 17.) Dr. Mullarkey only noted that there was no "obvious ligamentous or meniscal injury" in the knee and the "alignment" of the wrist was "normal," with "no evidence of fracture." (*Id.*)

Plaintiff's condition continued to worsen. On March 12, 2018, he submitted a health care service request to his custodians at the Jail, stating that he was "barely sleeping from the pain" and "needed[ed] to see a doctor fast." (*Id.* ¶ 19.)

On March 21, 2018, plaintiff saw Dr. Kapotas again. For the first time, Dr. Kapotas identified signs of degenerative joint disease in plaintiff's "carpometacarpal joint and radiocarpal joint," and he administered a cortisone injection in his carpometacarpal joint (*i.e.* the thumb joint). (*Id.* ¶ 20, *see id.* ¶ 11.) However, Dr. Kapotas did not diagnose the arthritis in "the radioulnar and intercarpal joints of plaintiff's wrist, or the arthritis in the medial and patella tendon compartments in plaintiff's knee," nor did he "make a referral to a rheumatologist to have Mr. Smith's arthritis examined for further treatment" or "consider the possibility that Mr. Smith's rapidly developing arthritis might be correlated with his skin condition." (*Id.* ¶ 20.)

In the succeeding months, plaintiff attended occupational and physical therapy sessions for his wrist and knee, but the pain continued, and defendants allegedly "ignored Mr. Smith's pleas about the ineffectiveness" of the treatment. (*Id.* ¶ 21.)

On July 3, 2018, an MRI was performed on plaintiff's knee and reviewed by Dr. Mullarkey. The MRI showed arthritis in plaintiff's knee, as well as the development of synovitis, "an

inflammation of the synovial membrane in the knee." (*Id.* ¶ 22.) This allegedly should have "set off alarm bells" because synovitis is "commonly associated with the onset of arthritis." Additionally, the MRI revealed a small "Baker's cyst," which is "also associated with arthritis." But Dr. Mullarkey diagnosed neither the arthritis nor the synovitis, nor did he refer plaintiff to a rheumatologist; he simply noted that the ligaments in plaintiff's knee were intact and needed no further treatment.

On July 25, 2018, plaintiff saw defendant Tramwell, a PA, for a primary care visit, following up on an earlier visit in April. On both occasions, Tramwell noted that plaintiff's wrist, thumb, and knee pain and skin condition remained unchanged, despite months of ongoing treatment. However, he never connected plaintiff's joint pain and skin condition, nor did he refer plaintiff to a rheumatologist.

In August 2018, plaintiff submitted another health care request, stating that he had been in pain since his fall in February and "no one has done nothing about it." (*Id.* ¶ 25.) He left the Jail in September 2018.

During the entirety of his detention at the Jail, plaintiff was allegedly told that "there was nothing wrong with him, while the Defendants ignored signs of the rapidly worsening arthritis in [his] wrist and knee and shrugged off [his] complaints that the prescribed treatments . . . were not working." (*Id.* ¶ 26.) Since leaving the Jail, he has continued to experience severe pain and his arthritis continues unabated, causing his fingers to swell and requiring him to use a cane to walk. (*Id.* ¶ 27.) According to plaintiff, defendants "ignored Mr. Smith's pleas, resulting in years of unnecessary pain and suffering and irreversible joint damage." (*Id.* ¶ 28.)

## **ANALYSIS**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a

complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

"Section 1983 creates a 'species of tort liability,'" *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976)), against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution," 42 U.S.C. § 1983. The due process clause of the Fourteenth Amendment governs medical care claims brought by pretrial detainees. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 352-54 (7th Cir. 2018). "Pretrial detainees . . . have not been convicted of anything," *id.*, and, therefore, they are protected against "punish[ment] prior to an adjudication of guilt in accordance with due process of law."

5

*Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Harsh conditions of pretrial confinement can "amount to punishment," *id.*, if the jail personnel who impose them "possess a sufficiently culpable state of mind." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015); *see also Miranda*, 900 F.3d at 352-53.

In particular, the denial of medical care for an "objectively serious medical condition," *see Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005), violates a pretrial detainee's due process rights if it is "objectively unreasonable" in the totality of the facts and circumstances, and if jail personnel act "purposefully, knowingly, or perhaps even recklessly when they consider[] the consequences of their handling of [the detainee's] case," *Miranda*, 900 F.3d at 353-54. The required mental state is more than mere negligence, but "less than subjective intent—something akin to reckless disregard" for the detainee's serious medical needs. *Id.* (quoting *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)); *see also Gordon*, 888 F.3d at 1125 (explaining that a pretrial detainee must prove, among other elements, that "the defendant did not take reasonable available measures to abate [a serious] risk [of harm], even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious").

A medical professional may show this level of reckless disregard for a serious health risk without "literally ignor[ing]" the detainee. *See Sherrod v. Lingle*, 223 F.3d 605, 611-12 (7th Cir. 2000) (explaining, in Eighth Amendment context, that a prison official may exhibit "disregard of a serious risk" if, for example, "a patient faces a serious risk of appendicitis, [and] the prison official gives the patient an aspirin and an enema and sends him back to his cell"); *see also Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (*en banc*) ("an inmate is not required to show that he was literally ignored by prison staff") (citing, *inter alia*, *Sherrod*). The detainee can prove that the medical professional had the requisite mental state by proving that he received treatment "'so

inadequate that . . . no minimally competent professional would have so responded under those circumstances.'" *McWilliams v. Cook Cty.*, No. 15 C 53, 2018 WL 3970145, at *9-10 (N.D. Ill. Aug. 20, 2018) (quoting *Collignon v. Milwaukee Cty.*, 163 F.3d 982, 989 (7th Cir. 1998)). "Put another way, the treatment must have been 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *McWilliams*, 2018 WL 3970145, at *10 (quoting *Norfleet v. Webster*, 439 F.3d 392, 395-96 (7th Cir. 2006)). Further, "[i]f a 'need for specialized expertise either was known by the treating physicians or would have been obvious to a lay person, then the obdurate refusal to engage specialists permits an inference that a medical provider was deliberately indifferent to the inmate's condition.'" *McWilliams*, 2018 WL 3970145, at *10 (quoting *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014) (internal quotation marks omitted)).[1]

In this case, plaintiff alleges that defendants examined him and reviewed medical imaging of his right wrist and left knee over the course of several months; he consistently complained of

---

[1] The Court notes that *Collignon*, *Norfleet*, and *Pyles* were all decided before the Seventh Circuit held in *Miranda* that pretrial detainees proceeding under the Fourteenth Amendment, unlike convicted prisoners proceeding under the Eighth Amendment, need not prove that jail personnel who act with reckless disregard for their serious medical needs were also subjectively aware that they were unreasonably ignoring serious risks; rather, the court explained in *Miranda* that pretrial detainees need only prove that their treatment was objectively unreasonable under the circumstances. *See Miranda*, 900 F.3d at 350-54; *cf. Conley v. Birch*, 796 F.3d 742, 746-47 (7th Cir. 2015) ("an official's failure to alleviate a significant risk that she should have perceived but did not" does not violate the Eighth Amendment) (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Prior to *Miranda*, courts in this circuit applied the Eighth Amendment standard to claims of denial of medical care brought by both convicted prisoners and pretrial detainees. In *McWilliams*, another case brought by a pretrial detainee, the court cited these and other cases decided under the Eighth Amendment standard, and this Court agrees that, even after *Miranda*, they are relevant and useful in determining when a medical professional acts with reckless disregard for a serious health risk, rather than mere negligence or gross negligence. *See McWilliams*, 2018 WL 3970145, at *10 (noting that *Miranda* recognized that the Fourteenth Amendment standard "still involves a state-of-mind component"). The Court is mindful that, unlike in *Collignon*, *Norfleet*, and *Pyles*, it need not inquire into defendants' "actual awareness of the level of risk." *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) *cited in Miranda*, 900 F.3d at 353-54; *see also Castro*, 833 F.3d at 1071 (citing Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 2016) as recognizing that "'reckless disregard' may be shown by an objective standard under which an individual 'is held to the realization of the aggravated risk which a reasonable [person] in his place would have, although he does not himself have it'"); *cf. Petties*, 836 F.3d at 728 (explaining that, in the Eighth Amendment context, even a prison medical provider's "objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim").

7

severe pain in those joints, in spite of the NSAIDs he was taking and even after beginning occupational and physical therapy; his visible symptoms (including his psoriasis, which he alleges was connected to his arthritis) and the medical imaging of the affected joints revealed clear signs of worsening arthritis; but in all those months of treatment, defendants never referred him to a rheumatologist or did anything to modify or augment his treatment, which consisted only of NSAIDs and occupational therapy. If plaintiff proves these allegations to be true, "a reasonable juror could infer that Defendants" had information sufficient to put them on notice of a risk of painful, potentially debilitating arthritis that was serious and "significant from the start." *See Dean v. Wexford Health Sources, Inc.*, No. 17-CV-3112, 2019 WL 6255043, at *3 (C.D. Ill. Nov. 22, 2019). Alternatively, or additionally, a reasonable juror could infer that defendants had knowledge that the treatment defendants had prescribed was "ineffective" and plaintiff was still in severe pain, but nevertheless they did "nothing more" for him. *See Blankenship v. Obaisi*, 443 F. App'x 205, 209 (7th Cir. 2011).

These findings would support a conclusion that defendants showed a reckless disregard for plaintiff's medical needs by providing inadequate treatment beneath the level of minimal competence and far afield of accepted professional standards and/or ignoring an obvious need for specialized expertise. *See McWilliams*, 2018 WL 3970145, at *10 (plaintiff stated claim by alleging that defendant improperly treated broken hand by fashioning handmade plaster cast, despite knowledge that plaintiff needed to see a specialist so that the bone could be properly set); *see also Davis v. Curran*, No. 18 C 6050, 2019 WL 1125789, at *2-3 (N.D. Ill. Mar. 12, 2019) (plaintiff stated claim by alleging that he suffered symptoms that were "readily apparent" to defendants but still defendants did not alter his course of treatment involving tapering of asthma medication).

8

Defendants correctly state that a pretrial detainee is not entitled to the treatment of his choice, nor may he state a constitutional claim merely by second-guessing a medical provider's professional judgment, *see McCaskill v. Manilla*, No. 13 C 3166, 2014 WL 7476232, at *4 (N.D. Ill. Dec. 30, 2014) (citing cases), and they argue that plaintiff has done no more than claim that defendants' medical judgment was wrong and that they should have treated him differently. Defendants recite the numerous occasions on which defendants examined plaintiff or his medical imaging and cite his prescribed treatment of NSAIDs and occupational therapy, and they insist that the Fourteenth Amendment requires no more. The Court disagrees. Plaintiff alleges, or it is fair to infer from his allegations, that based on the results of the medical imaging, the in-person examinations, and plaintiff's complaints of excruciating pain, defendants learned facts from which reasonably well-qualified medical professionals would have concluded that plaintiff had a serious medical condition for which he was receiving treatment that was either inadequate from the start or had proven to be ineffective; yet, as plaintiff's condition worsened, they made no corresponding adjustments. That states a constitutional claim. *See Miranda*, 900 F.3d at 354 (defendants "deliberately chose a 'wait and see' monitoring plan," despite knowing of a serious health risk that may have required action rather than "inaction") (citing *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 380, 382 (7th Cir. 2017)); *Blankenship*, 443 F. App'x at 209; *Dean*, 2019 WL 6255043, at *3; *Davis*, 2019 WL 1125789, at *2-3; *McWilliams*, 2018 WL 3970145, at *9-10.

Defendants insist that psoriatic arthritis is not an easy condition to diagnose and their failure to diagnose it did not run afoul of the standard for constitutionally adequate medical care, but this merely denies plaintiff's allegations, which the Court must accept as true on a motion to dismiss. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.") *cited in Twombly*,

550 U.S. at 556.  Plaintiff need not prove his claims in the complaint; he need only state a plausible claim.  *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (in considering whether a plaintiff's allegations state a plausible claim under Rule 8, "the court will ask itself *could* these things have happened, not *did* they happen," and plaintiff need only "give enough details about the subject-matter of the case to present a story that holds together").  Plaintiff's allegations are sufficient to state a plausible claim of denial of adequate medical care under the due process clause of the Fourteenth Amendment.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss [30] is denied.

**SO ORDERED.**  **ENTERED: February 4, 2020**

**HON. JORGE ALONSO**
**United States District Judge**